# EXHIBIT 4

For Federal civil complaint
-- DECLARATION OF BRIAN DAVID HILL IN SUPPORT OF DOCUMENT 2 COMPLAINT AND IN SUPPORT OF MOTION UNDER RULE 45 ASKING THE CLERK TO SUBPOENA ATTORNEY JOHN SCOTT COALTER FOR DISCOVERY AND TO PROVE THE FACTUAL MATTER UNDER COMPLAINT --
Brian David Hill v. Executive Office for United States Attorneys (EOUSA), United States Department of Justice (U.S. DOJ)

## Civil Case Number 4:17-cv-00027

# Interview and Interrogation of people with autism (including Asperger syndrome)

By Dennis Debbaudt

Conducting on-scene interviews of victims, witnesses, and suspects, a routine event for patrol officers, allows the officer to gather basic information such as who, what, where, when, and why. The officer uses this information to assess situations and decide on further action.

An interrogation differs somewhat from basic fact-gathering since it tends to focus more on a subject who probably is suspected of a criminal act. Different techniques, rules, and procedures apply during an interrogation. A law enforcement professional may be trained in the techniques of interrogation, the rules that apply - such as when to advise suspects of their legal rights - and what procedures to use - such as the venue, environment, or comfort level of the suspect. An interrogation is conducted when there is reason to suspect that a person knows more about or was involved in committing a criminal act.

Whether it is a simple field interview, or a more focused interrogation, dealing with persons with autism presents unique challenges and considerations.

## Misleading indications of guilt

There will be occasions when first-responders refer a case involving a person with autism for further questioning. In most cases this will involve an individual who apparently communicates very well and has achieved a high level of independence in the community. The person may have been found at or been identified by others as being at the scene or possessing knowledge of a crime.

Higher-functioning or more independent individuals with autism may live alone or without constant supervision, be able to drive or use public transportation, hold a job, and enjoy leisure activities. They may possess apparently normal verbal skills but be deficient in comprehension, social awareness, and decision-making. They may appear as quite normal at first, but the symptoms, behaviours, and characteristics - for example, providing blunt or tactless answers, changing the subject, or being unable to understand or accept a rational answer - will become apparent to the educated investigator. However, without an understanding of the disability it will be easy to misinterpret the information provided as an indicator of guilt.

They may provide no eye contact at all, even when a questioner shifts their position to obtain it. The person may have been taught to give eye contact but this may be perceived as insincere, glaring, or fixated. The interviewer may mistake this unusual eye contact as a tension-relieving technique used by a guilty person, when it is nothing more than a symptom of the condition of autism.

When stressed, communications skills may diminish or disappear. Answers may seem evasive or unconnected to the question that was asked. Individuals may appear belligerent, argumentative, stubborn, or inattentive - behaviour that may seem indicative of a person with something to hide. They can easily become the object of increased scrutiny by the questioner. What started as a routine fact-gathering task may turn into an unnecessary interrogation because an officer, unfamiliar with the behaviours of ASDs may have had their law enforcement instincts rightfully aroused.

## Possible traps when interrogating a person with autism

Techniques used during interrogations may include the use of trickery and deceit:

'Without some elements of "trickery", such as leading the suspect to believe that the police have some tangible or specific evidence of guilt, many interrogations will be totally ineffective' (Inbau and Reid 1967, p.196).

'Only one important qualification has been attached to the rule; the trickery or deceit must not be of such nature as to induce a false confession' (Inbau and Reid 1967, p.195).

The higher-functioning person through his or her responses, and the unaware interrogator through

their beliefs, may become unwitting accomplices to continuing a faulty investigation in the best case or, in the worst case, to extracting a false confession.

The following are some possible traps that interrogators can fall into when conducting the interrogation of a person with autism.

### Memory Skills

Interrogators should understand that the person with autism may have highly developed memory skills. The person may have learned to commit facts or the statements of others to memory: This rote skill may allow him or her to quickly assimilate and regurgitate data. The individual may be more proficient in his or her expression of these facts than in comprehension of them. He or she may have developed a sophisticated form of echolalia, echoing and repeating the words of others. For example, the person with autism could memorize the allegations of a citizen overheard at the scene, facts inadvertently provided by a first-responding officer, and details of some of the circumstantial evidence that an interrogator has revealed during questioning. Under these circumstances, the person with autism could provide a very convincing untrue statement or false confession. At the least, this knowledge could be misconstrued as real familiarity of facts that only a guilty person could know.

### The Interrogator as Authority Figure

Persons with autism may have been conditioned through their lifetime to look to authority figures to make many of life's important decisions for them. They have learned to depend on and trust these authority figures to be right. The interrogator may be viewed as another authority figure that is always right. 'If he thinks I robbed the bank, maybe he's right' is a conclusion that the confused person with autism may develop during an interrogation.

### Friendly-Unfriendly

Persons with autism may have a hard time developing friends. They may seek the friendship of others, only to be continually disappointed. They may repeat social gaffes that others find repelling, and they may learn little from these friend-seeking experiences. Although they may not have learned how to make a friend, this will not stop them from trying.

The interrogation techniques of friendly-unfriendly interrogators have the potential to produce false confession from such persons. 'The friendly-unfriendly act is particularly appropriate in the interrogation of a subject who is politely apathetic - the person who just nods his head as though in agreement with the interrogator, but says nothing in response except possibly a denial of guilt' (Inbau and Reid 1967, p.64). The person with autism may involuntarily give an interrogator the impression that he or she is apathetic, and may deny guilt because he or she is innocent.

The friendly interrogator may convince the trusting individual that they are, truly, their friend. The person with autism has now just made a new friend, and 'if my friend wants to know about me robbing a bank, then I'll tell him just to keep him around.' Rather than telling the truth, the person will tell his or her 'friend' what he or she thinks they want to hear.

### Concrete Thinkers

Persons with autism are concrete thinkers. Jokes, sarcasm, innuendo, satire, trickery and deceit are difficult concepts for them to understand and appreciate. Their world is unadorned with pretext, pretence, sham, and dishonesty. They are naturally guileless and very honest. They are not very able liars. They expect others to be honest and they can become confused or disappointed when they are not. We have learned that persons with autism may not have a complete understanding of what is expected of them, or the consequences of their actions. They may not understand how serious the consequences of the confession will be for them. They may be led to believe that lying is what is expected of them.

### Poor Liars

An interrogator may seek an admission of lying about any part of the alleged offence. The person with autism may try to respond to this new friend or authority figure with what he or she believes is the reply that is wanted. The person may truly have made a mistake; to the interrogator, it was a lie.

When asked if he or she has ever thought about committing the offence in question, the honest-to-a-fault but innocent person with autism may answer 'Yes', as opposed to the characteristic answer of , No' from an innocent person. While both persons only thought in passing about

committing such an offence, the 'normal' person would not consider answering yes. The concrete-thinking autistic person may answer the question as it is asked, causing the interrogator to continue the probe.

It is possible that the person with autism has learned through experience to lie. But her or his attempts to lie will be done poorly. An interrogator should ask a series of unrelated questions to determine the person's ability and potential for lying. This should be done prior to asking questions that are pertinent to the matter at hand.

### Tips for the interviewer/interrogator

The interviewer must be specific in what information is sought by asking questions that avoid ambiguity. If the interviewer asks, 'Did you take the money?', the person with autism may say 'Yes' whether or not she or he actually took it. It would be clearer to ask, 'What did you do?' allowing for the individual to provide a response. If you ask, 'Were you with your family or John?' the autistic person may respond, 'John', because that was the last choice of the sequence. If the question was asked again but in reverse order, the autistic person may answer, 'My family,' for the same reason (Perske 1991).

A more specific question might be, 'Who were you with?' which reduces the influence of suggestion on the subject. Obtaining a false confession is a situation for which no conscientious law enforcement officer would want to be responsible.

Some other factors investigators may consider:

- Be sure the subject understands his or her legal rights.
- Saying yes is not the same as understanding them. To the concrete thinker 'waiving your right' may mean waving your right hand.
- To avoid confusion, ask questions that rely on narrative responses.
- Asking yes or no question is an essential and important element of determining guilt. But consider asking a series of yes or no questions to determine the style and dependability of the response. Then ask the key yes or no questions.
- Seek the advice of a psychiatrist or psychologist who is familiar with autism. Consider contacting a specialist in autism from outside the criminal justice system.
- Seek the advice of a prosecutor. You have a job to do and want to perform it in the best way possible. With their unusual responses to your questions, the higher-functioning person with autism may challenge all of your training.
- Follow procedure, but also follow your gut instincts if you feel that something isn't 'quite right' with the subject of your investigation. Like the old adage, if the statement or confession is too good to be true, it probably is.