CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

AUG - 1 2017

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

In the United States District Court

For the Western District of Virginia

Danville Division

Brian David Hill
Plaintiff(s)

v.

Executive Office for United States Attorneys
(EOUSA)
&
United States Department of Justice (U.S. DOJ)
Defendant(s)

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 4:17-cv-00027
ATTN: Hon. Judge Jackson L.
Kiser
CC: Hon. Magistrate Judge
Robert Stewart Ballou

## PLAINTIFF'S MOTION TO RECONSIDER THE MAGISTRATE JUDGE'S ORDER UNDER DOCUMENT #32, AND OBJECTIONS TO THE ORDER

## MOTION, OBJECTIONS AND MEMORANDUM/BRIEF IN SUPPORT OF THIS OBJECTION

NOW COMES, the plaintiff ("Brian D. Hill"), representing himself, and hereby

respectfully files objections to the ORDER by the Hon. Magistrate Judge Robert S.

Ballou ("Judge Ballou") under Document #32, requests that the Honorable district court

Judge Jackson L. Kiser ("Judge Kiser") move to modify, set aside, overturn/vacate,

reverse, and/or to correct the ORDER to not be erroneous and to not make claims and/or

decisions that cannot be supported by applicable law and is contrary to applicable law. In

a sense the <u>Plaintiff appeals the decision of the U.S. Magistrate Judge to the presiding</u>

<u>Judge Kiser to modify, set aside, overturn/vacate, reverse, and/or to correct the order</u>

<u>under Document #32.</u>

1

No evidence will be exhibited in attachment to this motion since this motion to reconsider the order will be based upon the federal rules, procedural due process, and based upon what is already on the record prior to the order that was entered on July 19, 2017, similar to the appeal to the higher court.

The Plaintiff files this motion under Rule 72(a) of the Federal Rules of Civil Procedure.

That rule stated as follows:

> Rule 72. Magistrate Judges: Pretrial Order
> (a) NONDISPOSITIVE MATTERS. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. **A party may serve and file objections to the order within 14 days after being served with a copy.** A party may not assign as error a defect in the order not timely objected to. **The district judge in the case must consider timely *objections and modify or set aside any part of the order* that is clearly erroneous or is contrary to law.**

The Plaintiff shall state that the order was erroneous and is also contrary to law.

In support of this OBJECTIONS and motion, Plaintiff establishes the facts, relevant case law, and elements in this OBJECTIONS to state as follows:

2

# I. **Plaintiff's Objections**

1. Plaintiff objects to Judge Ballou's DENIAL of the Document #27 "Motion and Supporting Brief <u>Requesting Pretrial Status Conference for Discovery Matter</u>". In Judge Ballou's order he stated two times in his order that Page 1. "*For the reasons outlined more fully below, Plaintiff's motions are DENIED and Defendants' motion to quash discovery is GRANTED*," and pg. 6 "*I find Plaintiff's proposed subpoenas seek irrelevant documents and testimony and a pretrial status conference is unnecessary. Plaintiff's motions are DENIED and Defendants' motion to quash discovery is GRANTED.*" The reason why Plaintiff has an objection to denial of that motion is due to the <u>14ᵗʰ Amendment's right to procedural due process in the U.S. Constitution</u>. His order denying the motion for a pretrial conference deprives the Plaintiff of the procedural due process right to a hearing which is afforded in civil cases. See paragraphs 6, 7, 8, 9, 10, 11, and 12 inside of the "II. **Memorandum/Brief in Support of MOTION**" below, for the memorandum concerning the case law and Constitutional clause backing this objection.

2. Plaintiff furthermore objects to Judge Ballou's DENIAL of the Document #27 "Motion and Supporting Brief Requesting Pretrial Status Conference for Discovery Matter", because it conflicts with Judge Kiser's "Pretrial Order" and does so in three different ways. I shall state how Judge Ballou's Document #32

3

ORDER conflicts with the Document #11 pretrial order of Judge Kiser. I shall state as follows:

a. Document #11, Paragraph (2) "Parties shall submit a status report in the form of a letter, setting forth any pretrial matters which need to be taken up with the Court no later than 60 days prior to trial. **A pretrial conference will be scheduled at the request of any party**."

b. Document #11, Paragraph (4) "**All motions must be accompanied by a supporting brief.** In the event that a motion has been filed prior to the entry of this Order and it was not supported by a brief, movant must file a supporting brief within 14 days of the date of this Order. **Briefs in opposition must be filed within 14 days of the date of service of the movant's brief** (or within 14 days of this Order if a motion and brief have been served prior to this Order). **EXCEPT FOR GOOD CAUSE SHOWN, IF BRIEFS IN OPPOSITION TO THE MOTIONS ARE NOT FILED, IT WILL BE DEEMED THAT THE MOTION IS WELL TAKEN. Movant's reply brief must be filed within 7 days of the date of service of the brief in opposition to the motion.**"

c. Document #11, Paragraph (5) "**It shall be the obligation of the moving party to bring the motion on for hearing by notice.** If by mutual agreement of the parties a hearing is not required, it shall be the obligation of the moving party to notify the Court that the motion is submitted on briefs."

4

Judge Ballou's order was signed and filed into the docket on July 19, 2017, and the Defendants' attorney ("U.S. Attorney") filed a "Motion to Quash Discovery Requests, or in the alternative, to Stay Discovery" was entered on July 12, 2017. As the Defendants' were the "Movant" which filed the motion, Judge Kiser specifically stated in his "Pretrial Order" that "Briefs in opposition must be filed within 14 days of the date of service of the Movant's brief" That means that the Plaintiff had from Wednesday, July 12, 2017, until the deadline of Wednesday, July 26, 2017, to which the motion would be well taken. After the opposing brief was to be filed, then the "Movant's reply brief must be filed within 7 days of the date of service of the brief in opposition to the motion". Therefore after the Plaintiff filed his opposing brief (Document #31, filed on July 17, 2017, entered on July 19, 2017) on July 17, 2017, and was entered on July 19, 2017, on the same day as Judge Ballou entered his ORDER granting the U.S. Attorney's motion that was opposed, denying the motion for a pretrial status conference aka a request for a hearing, and denied all other motions. Therefore the order by Judge Ballou deprived the U.S. Attorney and the Defendants' of their **procedural due process right** to respond to the Plaintiff's opposing brief to the Movant's motion to quash, as well as denying the right to requesting a pretrial conference as was stated in the pretrial order. **Issue #1:** Judge Ballou's order deprived the Government of the 7-day time period needed to respond to the Plaintiff's opposing brief, **Issue #2:** Judge Ballou's order was entered on the exact same day after the opposing brief was entered by the Clerk

5

(after being filed two days prior) on July 19, 2017 under Document #31 and all attached filings thereto. The number of attached filing and media exhibits such as: (1)The Audio CD with some pictures and a PDF file on the DATA-side of the **Audio CD (Mixed Audio/DATA CD-ROM disc) (Exhibit 8, Doc. #31-10), and the testimony in the audio disc is approximately 48 minutes and 43 seconds.** (2)The **Video DVD disc that contained a video presentation that was exhibited to prove that the hacktivist group called "Anonymous", infamous for hacking government websites and leaking information via the method known as "doxing", had published their viewpoint/perspective on the wrongful incarceration and wrongful charging of the Plaintiff.** Thus it shows that whomever leaked the N.C. State Bureau of Investigation ("N.C. SBI") case file photos was also claiming to work for "Anonymous". That was why the video was included as an Exhibit to prove to the U.S. Attorney and to the Court that Anonymous wanted to get information of the "covered up document" to the public light. **They didn't seem to like the fact that child pornography was downloading on the Plaintiff's Black Toshiba Laptop Computer while in the custody of Mayodan Police Department and the N.C. SBI.** (3)Photographs in color of Plaintiff and Alex Jones of INFOWARS, Plaintiff and former U.S. Congressman Virgil H. Goode, Plaintiff and James P. Tucker also known as Jim Tucker of the American Free Press, and Plaintiff and the WXII12 news reporter and camera-guy. All of that proves that the Plaintiff was not simply some random guy just accused of downloading child

6

pornography out of the woodwork. The Plaintiff was heavily involved with politics and it made some politicians and other people angry, thus opens up the Plaintiff to be an target of electronic attack and frame up operation, especially that of a possibly erroneous child pornography investigation that had politically involvement of former Rockingham Co. District Attorney Phil Berger Junior, and possibly Philip Edward Berger Senior the state Senator of North Carolina and the town attorney of Mayodan. **There was a lot of information in that opposing brief, and so for Judge Ballou to simply grant the defendants' motion and deny a hearing is erroneous**. That means the <u>evidence exhibits were ignored and not taken into account when his order was entered</u>. **Therefore Judge Ballou deprived the Plaintiff of at least reviewing over the opposing brief including all of the materials in attachment to the opposing brief, including a physical Audio CD with a DATA-side track containing the three leaked photographs, and the Video DVD disc containing a DVD video which be played on DVD players.**. Judge Ballou would not have had the time to review over all materials within the same day before entering his order. **Judge Ballou deprived both the Plaintiff's procedural due process right under the 14th amendment, and deprived the Defendants' right to respond to the opposing brief within the seven-day period afforded to the Movant of the motion to quash.**

3. Plaintiff objects to the fact that Judge Ballou only used the Freedom of Information Act ("FOIA") statute as a basis for his ORDER and denial of

7

motions and granting the Defendants' Motion. In the original complaint that was accepted by the court, in the complaint filed on April 25, 2017, Plaintiff had filed the lawsuit under both the **"Freedom of Information Act ("FOIA"), 5 U.S.C. §552", and the "Right to discovery packet of evidence under the 14th Amendment of the U.S. Constitution, Due Process clause (citing Brady v. Maryland, 373 U.S. 83 (1963))."** (See Doc. #2, COMPLAINT "Basis for Jurisdiction"). Judge Ballou only relied on the FOIA as the basis to deny all discovery rights of the Plaintiff. In fact this whole litigation isn't just based on simply just a possible violation of the FOIA, and possible withholding and cover-up of records requested via the FOIA. The allegations, the Affidavits/Declarations, and all other relevant evidence all rely on both the FOIA and the **"Right to discovery packet of evidence under the 14th Amendment of the U.S. Constitution, Due Process clause (citing Brady v. Maryland, 373 U.S. 83 (1963))."** Therefore the litigation should be decided under both the FOIA and the due process clause citing allegations that the Defendants' and the court appointed lawyer (John Scott Coalter) worked to prevent the Plaintiff from getting access to his copy of the discovery packet of evidence prior to the guilty plea. **Is it not an error to only treat this litigation under the same discovery restriction applied only to the FOIA, when those cases under case law highly likely did not present their cases under both the due process clause of the U.S. Constitution and the FOIA under 5 U.S.C. §552? All matters concerning this case need to use case law that**

8

apply appropriately to both the FOIA and the due process clause cases. Plaintiff had been entirely deprived of the due process right to the criminal case discovery evidence and was not allowed to see the evidence until after the final conviction. The decision of Judge Ballou to deny the motion asking for a NOTICE OF HEARING and only use the FOIA but not the due process basis further deprives the Plaintiff of life, liberty, and property, since his wrongful conviction.

4. **The Plaintiff objects to the fact that there is no basis to merely grant the Defendants' "Motion to Quash Discovery Requests, or in the alternative, to Stay Discovery"**. The "no basis" remark is referring to the fact that **the entire order merely was arguing about the "proposed subpoenas" being irrelevant and did not address the issues in the Defendant's motion, and did not address the opposing brief in Plaintiff's objections to Movant's motion**. The issues such as that the brief of the Movant in Document #29 (in support of Document #28) stated that the Defendants' "hereby moves to quash Brian David Hill's, ("Plaintiff"), Request for Production of Documents and Things and Set of Interrogatories (Discovery Requests), or in the alternative, to Stay Discovery." **Judge Ballou did not mention anything in his order in regards to the interrogatories and nothing about the discovery request letter that the U.S. Attorney asst. Cheryl T. Sloan had received.** Judge Ballou's ORDER granting the U.S. Attorney's motion under Document #28 is baseless and does not state a good reason why the interrogatories and discovery

9

letter must be quashed based upon Plaintiff's filed subpoenas which was not directed at the U.S. Attorney but was directed at third-party witnesses. The motion to quash being granted without a good reason is an order without merit. Therefore since his order had only detailed a discussion and conclusion over Plaintiff's proposed subpoenas "to have issued and served the following subpoenas duces tecum or subpoenas to appear and testify" that **Judge Ballou erred because he forgot to explain why he had even granted the U.S. Attorney's motion to quash.** The motion to quash was not even about the subpoenas but was over the discovery request letter and the interrogatories. **Judge Ballou had not even reviewed the interrogatories and the discovery request letter because they cannot be filed on court record (docket) due to Rule 5.1(d) of the Federal Rules of Civil Procedure which prohibit filing of discovery requests and responses. Judge Ballou just decides to randomly grant the U.S. Attorney's motion without even attempting to review over the "discovery request letter" and the "interrogatories".**

    a.   **Federal Rules of Civil Procedure Rule 5.1(d) FILING. (1) Required Filings; Certificate of Service. Any paper after the complaint that is required to be served—together with a certificate of service—must be filed within a reasonable time after service. But disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing: depositions, interrogatories, requests for**

10

documents or tangible things or to permit entry onto land, and requests for admission.

Part of the reason why the Plaintiff had requested a pretrial conference (See Doc. #27) was to present the very evidence that the Plaintiff could not file on the docket for the Judge to review. The Plaintiff wanted Judge Ballou to review over a photocopy of the "interrogatories" and the "discovery request letter" that was mailed to the U.S. Attorney aka the Defendants' attorney of record. Judge Ballou erred because he made the decision to quash the discovery letter and interrogatories without even reviewing over what questions were asked and what the discovery letter was requesting from the Government, and if they were indeed relevant to the FOIA request and the matter as set forth by the facts and issues of the complaint.

5. The Plaintiff objects to the statement under page 3 of Judge Ballou's order: "Plaintiff has failed to demonstrate though that these requested records and testimony are relevant to his FOIA claim against Defendants." Judge Ballou completely ignored and did not review over Document #4, which explains why and how the subpoenas are relevant to the civil complaint. Document #4 as the Clerk has added when it was filed said "MOTION Under Rule 45 Asking the Clerk to Subpoena Attorney John Scott Coalter for Discovery and to Prove the Factual Matter Under Complaint by Brian David Hill." There was even a supporting

11

brief/memorandum filed with the Clerk which was docketed under Document #12, as entry "Brief / Memorandum in Support re: 4 MOTION Under Rule 45 Asking the Clerk to Subpopena Attorney John Scott Coalter for Discovery and to Prove the Factual Matter Under Complaint and Declaration in Support of 2 Complaint filed by Brian David Hill. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Envelope)(mlh)" So the Plaintiff did give good reason as to why the one subpoena duces tecum was requested. For Judge Ballou to simply say that all proposed subpoenas were irrelevant and that Plaintiff had "failed to demonstrate though that these requested records and testimony are relevant to his FOIA claim against Defendants", is erroneous and does not reflect the record concerning the filings by the Plaintiff. Document #2-7, the FOIA request of Plaintiff had stated in the request that "*The records I am requesting are copies of my Discovery Packet of evidence pursuant to my Federal criminal case which includes the original audio CD containing my confession to Mayodan Police on August 29, 20-12, SBI forensic case file Subject/Suspect was Brian David Hill and SBI Case File # 2012-02146,*" and other things. So the subpoenas were relevant to the FOIA claim against Defendants' and the claim under the 14th Amendment that the Plaintiff's due process was deprived in his criminal case. <u>The proposed subpoenas are not fishing expeditions, they are based on what was turned over to the U.S. Attorney, what was used</u>

12

against the Plaintiff to deprive him of due process and wrongfully convict the Plaintiff, and is completely relevant on-the-record to the Plaintiff's complaint against the Defendants'. The subpoena for John Scott Coalter is already attached to a brief and motion to which explains why it is relevant to the FOIA request, and relevant to the claims made in the complaint for this FOIA litigation against the Defendants'. When Judge Ballou stated that all subpoenas are irrelevant, he didn't acknowledge under ECF such as Document #4, *"MOTION Under Rule 45 Asking the Clerk to Subpoena Attorney John Scott Coalter for Discovery and to Prove the Factual Matter Under Complaint by Brian David Hill. Motion referred to Judge Robert S. Ballou. (Attachments: # 1 Declaration of Evidence, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Proposed Subpoena, # 9 Envelope)(mlh) Modified on 6/19/2017 − added referral text (ham). (Entered: 05/04/2017)"*, and Document #12, *"Brief / Memorandum in Support re: 4 MOTION Under Rule 45 Asking the Clerk to Subpopena Attorney John Scott Coalter for Discovery and to Prove the Factual Matter Under Complaint and Declaration in Support of 2 Complaint filed by Brian David Hill. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Envelope)(mlh)"*. So Magistrate Judge Ballou erred when he stated that the subpoena for John Scott Coalter was irrelevant to what was already filed on the record. Under Document #2-8, Filed 04/25/17, Page 2 of 2, John Scott Coalter threatening to possibly

13

destroy a copy of the discovery evidence material that originated from the U.S. Attorney Office of Greensboro, NC (<u>spoliation of evidence</u>), that was requested via the FOIA which was exhibited in the original complaint containing the allegations against the Defendants', thus prove from the record, prior to the ORDER under Doc. #32, that the subpoena for John Scott Coalter was relevant to the claims against the Defendants', especially since John Scott Coalter threatened to commit an illegal act of "spoliation of evidence" after admitted to being in conflict of interest with the Plaintiff.

<u>The only issue that has not been addressed on the record is that the Plaintiff did not specify how much he was going to pay for reimbursement of John Scott Coalter for enforcement of the subpoena.</u> The Plaintiff has already agreed to get ready to file a new subpoena with conditions that the <u>Plaintiff will arrange for a third party to agree to pay for enforcement of the Plaintiff's proposed subpoena up to $100 or $150.00, for asking John Scott Coalter to produce all discovery materials then he can send his paralegal Braxton to provide the discovery materials to 310 Forest Street, Apartment 2, Martinsville, VA, and allow the Plaintiff to make a copy of all requested material for a few hours, then inspect the copy of the materials requested via the subpoena, and then reimburse the time and resources spent from John Scott Coalter ("Mr. Coalter") and his paralegal</u>

14

which can provide the material to the Plaintiff for copying and to inspect the materials.

The Plaintiff objects to Judge Ballou's claim in his ORDER under Document #32, that the subpoena for "John Scott Coalter" was irrelevant, and shall agree to provide the court with a payment plan on reimbursing Mr. Coalter. Since the payment will be provided by a third party, it shall not be held against the Plaintiff since the Court will not agree to have the Government fund the Plaintiff that is proceeding IFP, it should not be held against the Plaintiff that he is asking a third party to pay the cost of executing the subpoena and the district Court enforcing such subpoena on John Scott Coalter. Mr. Coalter is already acting as a hostile witness, threatening to dispose of the discovery material (spoliation of evidence) that is a copy of the very records requested via the FOIA. The Court will have to accept a payment plan based upon estimation and based on what the court rules are in specifics to reimbursement of complying with a subpoena, because Mr. Coalter admits he is in conflict of interest under both Document #12-1, and Document #12-5, Pages 1 to 3, and thus the hostile witness only gives the Plaintiff the option of planning a preset of fees that the Plaintiff agrees to pay for execution of the subpoena. If Plaintiff even attempts to contact Mr. Coalter and asks him of the estimated costs for enforcing a subpoena against him, HE WILL

15

**DESTROY THE RECORDS, ALL RECORDS, shred them, burn them, throw them in a dumpster somewhere, who knows (spoliation of evidence) and get rid of the copy of the entire discovery packet that originated from the U.S. Attorney Office of Greensboro, NC. The Court has to treat a case differently in regards to a hostile witness, which is threatening to destroy vital case files of his own client that received a copy of the discovery from the U.S. Attorney Office of Greensboro, North Carolina, of the Defendants'. For the foregoing reasons, the Plaintiff believes that Judge Ballou has erred and asks that all reasons be reviewed, then the Honorable Judge Kiser needs to set aside or modify the ORDER under Document #32 to correct the errors in the record.**

6. The Plaintiff's last objection is in paragraph 10. within the "II. Memorandum/Brief in Support of MOTION", "**Pro se civil rights complaints must be construed more liberally than pleadings filed by lawyers…**"

## II. **Memorandum/Brief in Support of MOTION**

7. The Requirements of Due Process.—Although due process tolerates variances in procedure "appropriate to the nature of the case,"[1] it is nonetheless possible

---

[1] **Mullane v. Central Hanover Trust Co., 339 U.S. 306, 313 (1950).**

16

to identify its core goals and requirements. First, **"[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."[2] Thus, the required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling persons to contest the basis upon which a State proposes to deprive them of protected interests.[3] The core of these requirements is notice and a hearing before an impartial tribunal.** Due process may also require an opportunity for **confrontation and cross-examination, and for discovery; that a decision be made based on the record,** and that a party be allowed to be represented by counsel.

8. **NOTICE and HEARING:**

   a. (1) Notice. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of

---

[2] **Carey v. Piphus, 435 U.S. 247, 259 (1978).** "[P]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases." Mathews v. Eldridge, 424 U.S. 319, 344 (1976).

[3] **Fuentes v. Shevin, 407 U.S. 67, 81 (1972).** At times, the Court has also stressed the dignitary importance of procedural rights, the worth of being able to defend one's interests even if one cannot change the result. Carey v. Piphus, 435 U.S. 247, 266-67 (1978); Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980); Nelson v. Adams, 120 S. Ct. 1579 (2000) (amendment of judgement to impose attorney fees and costs to sole shareholder of liable corporate structure invalid without notice or opportunity to dispute).

17

the pendency of the action and afford them an opportunity to present their objections."[4] This may include an obligation, upon learning that an attempt at notice has failed, to take "reasonable followup measures" that may be available.[5] The notice must be sufficient to enable the recipient to determine what is being proposed and what he must do to prevent the deprivation of his interest.[6] Ordinarily, service of the notice must be reasonably structured to assure that the person to whom it is directed receives it.[7] Such notice, however, need not describe the legal procedures necessary to protect one's interest if such procedures are otherwise set out in published, generally available public sources.[8]

b.  (2) Hearing. "[S]ome form of hearing is required before an individual is finally deprived of a property [or liberty] interest."[9] This right is a "basic

---

[4] Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950). See also Richards v. Jefferson County, 517 U.S. 793 (1996) (res judicata may not apply where taxpayer who challenged a county's occupation tax was not informed of prior case and where taxpayer interests were not adequately protected).

[5] **Jones v. Flowers, 547 U.S. 220, 235 (2006)** (state's certified letter, intended to notify a property owner that his property would be sold unless he satisfied a tax delinquency, was returned by the post office marked "unclaimed"; the state should have taken additional reasonable steps to notify the property owner, as it would have been practicable for it to have done so.)

[6] Goldberg v. Kelly, 397 U.S. 254, 267-68 (1970).

[7] Armstrong v. Manzo, 380 U.S. 545, 550 (1965); Robinson v. Hanrahan, 409 U.S. 38 (1974); Greene v. Lindsey, 456 U.S. 444 (1982).

[8] City of West Covina v. Perkins, 525 U.S. 234 (1999).

[9] Mathews v. Eldridge, 424 U.S. 319, 333 (1976). "Parties whose rights are to be affected are entitled to be heard." Baldwin v. Hale, 68 U.S. (1 Wall.) 223, 233 (1863).

18

aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment ..."[10] Thus, the notice of hearing and the opportunity to be heard "must be granted at a meaningful time and in a meaningful manner."[11]

9. **14th Amendment of the United States Constitution, Bill of Rights:**

All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **nor shall any State deprive any person of life, liberty, or property, without due process of law**; nor deny to any person within its jurisdiction the equal protection of the laws.

10. **Pro se civil rights complaints must be construed more liberally than pleadings filed by lawyers. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). "Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."**

---

[10] Fuentes v. Shevin, 407 U.S. 67, 80-81 (1972). *See* Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 170-71 (1951) (Justice Frankfurter concurring).
[11] Armstrong v. Manzo, 380 U.S. 545, 552 (1965)

19

<u>Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per</u>

<u>curiam)</u>. Multiple errors occurred in neglect of this principle.

<u>Judge Ballou had made an error in his order in the following ways:</u>

a. Failure of Judge Ballou to construe the "MOTION and Supporting Brief Requesting Pretrial Status Conference for Discovery Matter" (See Doc. #27).as both a <u>notice of hearing</u> and additional evidence, that demonstrates evidence proving a conflict in the claims of the EOUSA. The conflict lies in Document #27-1.claim #1: plaintiff was a federal inmate (assuming the claim was directed to at the time that the FOIA request was filed) in a correctional facility when facts show the opposite (See Doc. #2-3, pages 11 to 13), and claim #2: Witness from Office of Government Information Services ("OGIS") (See Doc. #27-1) claiming that the EOUSA explained to them that "USAO-MDNC provided the FOIA unit with all of the records responsive to your request and informed the FOIA unit that it was unable to release your PSR because it was under seal." There are two conflicting statements. The first one is a total falsehood and the second is the truth, yet the truth was never directed at the plaintiff but was provided to the OGIS mediator. So the motion requesting a pretrial status conference didn't just request a hearing for the discovery but also showed factual evidence (unless disputed as otherwise by the other party) that shows a conflict of statements

20

from the EOUSA FOIA unit. That would be a good enough reason to request a notice of hearing.

11. Due Process: Courts have identified the basis for such protection from the due process clauses of the Fifth and Fourteenth Amendments to the Constitution, which prohibit the federal and state governments, respectively, from depriving any person of "life, liberty, or property, without due process of law"[12].

12. In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. E. g., ICC v. Louisville & N. R. Co., 227 U.S. 88, 93 -94 (1913); Willner v. Committee on Character & Fitness, 373 U.S. 96, 103 - 104 (1963). What we said in [397 U.S. 254, 270]  Greene v. McElroy, 360 U.S. 474, 496 -497 (1959), is particularly pertinent here: "Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory

---

[12] GOLDBERG v. KELLY, (1970)  No. 62  Argued: October 13, 1969   Decided: March 23, 1970

Case 4:17-cv-00027-JLK-RSB   Document 37   Filed 08/01/17   Page 21 of 32   Pageid#: 668

might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment."

13. Giglio v. United States, 405 U.S. 150 (1972)); John L. BRADY, Petitioner, v. STATE OF MARYLAND. No. 490. Argued: March 18 and 19, 1963. Decided: May 13, 1963. The American Bar Association Standards mandate the prosecutor to make the required disclosure even though not requested to do so by the defendant to disclose evidence "helpful" to the defense.  Again, Brady v Maryland, 373 U.S. 83.83 S.Ct.1194, 10 L.Ed.2d 215 (1963) and Giles v Maryland, 386 U.S. 66. 87 S.Ct. 793,  17 L.Ed.2d 737 (1967).

14. What John Scott Coalter is threatening to do, when he had spoken with Mr. Forinash, is legally considered a known act of "spoliation of evidence". <u>Mr. Coalter should be disbarred and kicked off of the Criminal Justice Act ("CJA") attorney appointment panel</u> for even threatening to spoliation of the discovery evidence<u>, in favor of the U.S. Attorney protecting his wrongful victory by wrongfully convicting the Plaintiff</u>. The spoliation of evidence is the intentional, reckless, or negligent withholding, hiding, altering, fabricating, or destroying of evidence relevant to a legal

22

proceeding.[13] The U.S. Attorney is also held to the "spoliation of evidence" standards. The U.S. Attorney should also be held accountable not just under "obstruction of justice" but also "spoliation of evidence". Spoliation has three possible consequences: in jurisdictions where the (intentional) act is criminal by statute (obstruction of justice), it may result in fines and incarceration (if convicted in a separate criminal proceeding) for the parties who engaged in the spoliation; in jurisdictions where relevant case law precedent has been established, proceedings possibly altered by spoliation may be interpreted under a spoliation inference, or by other corrective measures, depending on the jurisdiction; in some jurisdictions the act of spoliation can itself be an actionable tort.[14] "Brookshire Brothers Ltd. v. Aldridge, 10-0846, (retrieved 11 December 2014), Texas Supreme Court: *The use of a spoliation inference may be warranted depending on the circumstances, but not all cases of spoliation warrant this serious response by the court. In a 2013 case before the Texas Supreme Court named Brookshire Brothers Ltd. v. Aldridge, A man named Jerry Aldridge went into one of Brookshire Brothers' supermarkets, and after a*

---

[13] Black's Law Dictionary (8th ed. 2004). For an overview of spoliation, see generally Michael Zuckerman, Yes, I Destroyed the Evidence -- Sue Me? (http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1536805), Journal of Computer and Information Law (Link acquired by family)

[14] "Spoliation of Evidence in All 50 States" (https://www.mwl-law.com/wp-content/uploads/2013/03/spoliation-of-laws-in-all-50-states.pdf) (PDF). MWL Attorneys. (Link acquired by family)

23

*few minutes in the store, slipped and fell. He went to a doctor approximately 90 minutes later, and returned to the store five days after the accident to complain of back injuries caused by the fall. The supermarket chain's security department only kept what it felt was the relevant part of that store's surveillance video consisting of just before to a few minutes after Mr. Aldridge slipped and fell. When he first filed suit against Brookshire Brothers without an attorney, Mr. Aldridge was able to get video evidence consisting of the 30 seconds before he slipped and fell, plus the next seven minutes. He attempted to obtain more of the store's video surveillance footage, but was refused. When he hired an attorney, the attorney was also unable to obtain footage from before or after the event (which might have been useful to prove negligence based on how long the spill was on the floor, or on the seriousness of Mr. Aldridge's injury). The store's surveillance system automatically writes over previously recorded video after 30 days, unless saved separately. Brookshire Brothers did not keep any additional footage from before or after the accident. The trial court judge found that the store's refusal to provide the additional video footage constituted spoliation, and gave the jury a "spoliation inference instruction". The jury was instructed that they may find the failure by the store to retain (and subsequently provide to the other party) the additional footage may be considered an attempt to hide evidence that Brookshire Brothers' management knew would be damaging to their case. The jury returned a*

24

*verdict for Mr. Aldridge in excess of US $1 million. The Texas Twelfth District Court of Appeals upheld the verdict and the spoliation inference instruction. The Texas Supreme Court reversed, ordering a new trial, stating that it was abuse of discretion by the trial court to issue a spoliation inference instruction in this case, that the court should have imposed a different corrective measure on Brookshire Brothers (a less severe sanction), and that a spoliation inference instruction to the jury is only warranted in egregious cases of <u>destruction of relevant evidence.</u>"*

## III. <u>CONCLUSION</u>

Did Judge Ballou's order under Document #32 deprive the Plaintiff, and/or the Defendants of their procedural due process rights, and was it ruled erroneously?

Did Judge Ballou deprived both parties of their procedural due process right to a "pretrial conference" aka a hearing that "will be scheduled at the request of any party"?

Did Judge Ballou ignore the statutory and jurisdictional basis that this civil action (lawsuit/litigation) wasn't just filed under <u>"Freedom of Information Act ("FOIA"), 5 U.S.C. §552"</u>, but was also filed under the basis for jurisdiction of <u>"the "Right to discovery packet of evidence under the 14th Amendment of the U.S. Constitution, Due Process clause (citing Brady v. Maryland, 373 U.S. 83 (1963)).</u>"?

Did Judge Ballou err? Did Judge Ballou rule in error by focusing his attention only under 1-part of the entire civil action? Only the FOIA but not the due process clause as set forth in Brady v. Maryland and Giglio v. United States?

Did Judge Ballou error by depriving both parties of requesting a pretrial conference that can be requested by any party to the case?

Did Judge Ballou not take all evidence into account when his order was filed and entered?

Since the U.S. Attorney Office of Greensboro, NC, is the federal prosecutor for Plaintiff Brian D. Hill's criminal case (1:13-cr-435-1, Middle District of North Carolina), are they still required under ethics, case law, the Constitution, and federal rules and procedures to still provide the Plaintiff with a copy of his criminal case discovery packet on request? Doesn't Plaintiff Brian still have the right to investigate the evidence that was originally used against him at the Grand Jury proceeding and was provided to Eric David Placke, then transferred to hostile witness Mr. Coalter (spoliation of evidence) that is threatening to destroy the discovery material?

**Even under Document #12 in support of Document #4, that Judge Ballou was supposed to have read in its entirety (and review over the evidence attached thereto) before making a decision in his Document #32 ORDER, it stated under Oath in a Declaration/Affidavit that John Scott Coalter was acting hostile against the Plaintiff in such a way that he wants to make sure that the Plaintiff never gets to prove his**

26

**innocence**, and **never gets the discovery papers and Audio CD that was requested via the FOIA (spoliation of evidence), which works in Mr. Coalter's best interests since he is in conflict of interest**. It stated under Document #12, in Pages 4 to 5 that "*I and my family had attempted to find an Attorney to get the discovery evidence out of Mr. Coalter's hands, but that had failed. My family had got in contact with an Attorney named Emily Gladden of the 'Tin Fulton Walker & Owen' law firm located at 127 West Hargett Street, Raleigh, NC 27601. I and my family wanted her to get the discovery evidence out of Mr. Coalter's hands and she suggested that we could also work on trying for my actual innocence. So she gave my family a contract paper and she was going to further do some research before my mother signs a contract for her services as my private Attorney-of-record, and my family was going to use what little money they had to try to at least stop Mr. Coalter from blocking me any further from proving my innocence. On April 13, 2017, I tried to fax her some records that can help her to prove my innocence. At a later day which is sometime in April, 2017, I had received a phone call from my grandparents that informed me that Emily Gladden had heard from Mr. Coalter and was told some things, and after that her boss had decided that there was nothing we could do and decided not to do anything more. It has come to my attention that Mr. Coalter seems to be working against me and possibly sabotaging my criminal defense, by playing dirty games against me, and that he will never let any other Attorney acquire the discovery papers.*" ◀-- (Document #12, in Pages 4 to 5)

Judge Ballou erred for not acknowledging any of the subpoena's relevance to the FOIA request, the claims in the FOIA litigation (Document #2), and how John Scott Coalter was connected with the entire thing with receiving a copy of the entire discovery from the U.S. Attorney of Defendants' and yet refusing to cooperate with the Plaintiff trying to prove his innocence. The entire record shows that Plaintiff is entitled to the subpoena power at-least for Mr. Coalter as the subpoena is relevant to the FOIA claim and is connected with the FOIA claim with the evidence that was filed via FOIA Appeal and the Document #2-8 which was an Exhibit attached to the original complaint served with the Defendants'. **The only issue Plaintiff has not addressed with Magistrate Judge Ballou was how he had planned to pay for the subpoena to be executed and enforced against John Scott Coalter. Other than that, the Judge erred for denying the subpoena under Document #4-8 which was referred to Judge Ballou.**

The plaintiff hereby made the valid objections to Judge Ballou's ORDER under Document #32, and request that the Honorable U.S. District Court Judge Jackson L. Kiser reverse or modify the "*ORDER denying 4 Motion Under Rule 45 Asking the Clerk to Subpoena Attorney John Scott Coalter for Discovery and to Prove the Factual Matter Under Complaint; denying 19 Motion for Issuance of Subpoenas to Produce Documents and Subpoenas to Appear and Testify at a Hearing or Trial in a Civil Action; denying issuance of 20 Proposed Subpoena to Town of Mayodan Police Department; denying 27 Motion and Supporting Brief Requesting Pretrial Status Conference for Discovery Matter; granting 28 Motion to Quash Discovery Requests, or in the alternative, to Stay Discovery*. Signed by Magistrate Judge Robert S. Ballou on 7/19/2017."

28

**The Plaintiff asks that the requested hearing "Doc. #27 Motion and Supporting Brief Requesting Pretrial Status Conference for Discovery Matter" be granted and treated as a "Notice of hearing" to which the Plaintiff and Defendants' have a procedural due process right to. That the Plaintiff and Defendants' be given a chance to schedule the pretrial conference to bring up all of the issues raised by the Plaintiff and the issues raised by the Defendants'.**

**The Plaintiff does exhibit good cause as to why the Court should have a pretrial status conference at the request of the Plaintiff. Therefore, the Plaintiff asks this Court reverse Judge Ballous's denial of the request then consider granting his Document #27 MOTION, and consider the Government's MOTION under Doc. #28 and #29 Brief at the pretrial status conference that was requested by the Plaintiff before the Government even filed their MOTION a day later. Thanks!**

Plaintiff also requests with the Court that copies of this Motion and Brief be served upon the Government as stated in **28 U.S.C. §1915(d)**, that "The **officers of the court shall issue and serve all process, and perform all duties** in such cases. **Witnesses shall attend as in other cases,** and the **same remedies shall be available as are provided for by law in other cases.** Plaintiff requests that copies be served with the defendants' and the U.S. Attorney office of Roanoke, VA and AUSA Cheryl T. Sloan via CM/ECF Notice of Electronic Filing ("NEF") email, by facsimile if the Government consents, or upon U.S. Mail. Thank You!

**This PLAINTIFF'S OBJECTION, MOTION, and Brief is respectfully filed with the Court, this the 1st day of August, 2017**

Date of signing:

*August 1, 2017*

Respectfully submitted,

*Brian D. Hill*
~~Signed~~　　Signed
**Brian D. Hill (Pro Se)**
**310 Forest Street, Apartment 2**
**Martinsville, VA 24112**
**Phone #: (276) 790-3505**



29

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2017, I filed the foregoing
**"PLAINTIFF'S MOTION TO RECONSIDER THE MAGISTRATE JUDGE'S ORDER UNDER DOCUMENT #32, AND OBJECTIONS TO THE ORDER -- MOTION, OBJECTIONS AND MEMORANDUM/BRIEF IN SUPPORT OF THIS OBJECTION"**
with the Clerk of the Court by hand delivery at 700 Main St., Ste. 202, Danville, VA 24541.

A copy of this filing was also mailed to the following defendants' Attorney:

Certified Mail tracking #:
7016-2710-0000-4016-2564
Cheryl Thornton Sloan
U.S. Attorney Office
Civil Case # 4:17-cv-00027
101 South Edgeworth Street, 4th Floor
Greensboro, NC 27401

Plaintiff requests with the Court that copies of this filing be served upon the defendants' as stated in 28 U.S.C. §1915(d), that "The officers of the court shall issue and serve all process, and perform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases. Plaintiff requests that copies be served with the defendants' via CM/ECF Notice of Electronic Filing ("NEF") email, by facsimile if the Government consents, or upon U.S. Mail. Thank You!

*Brian D. Hill*
Signed

**Signed**

**Brian David Hill (Pro Se)**
**Former news reporter & Founder of USWGO Alternative News**
**Home Phone #: (276) 790-3505**
**310 Forest Street, Apt. 2. Martinsville, VA 24112**



30

## U.S. Postal Service™
## CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)       $
☐ Return Receipt (electronic)     $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required        $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To *Cheryl T. Sloan, U.S. Attorney Office*
Street and Apt. No., or PO Box No. *401 S. Edgeworth St, 4th Floor*
City, State, ZIP+4® *Greensboro, NC 27401*

PS Form 3800, April 2015 PSN 7530-02-000-9047          See Reverse for Instructions

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL®

7016 2710 0000 4016 2564

**HAND-DELIVERY RECEIPT OF SERVICE**

I have personally served the,
**"PLAINTIFF'S MOTION TO RECONSIDER THE MAGISTRATE JUDGE'S ORDER UNDER DOCUMENT #32, AND OBJECTIONS TO THE ORDER -- MOTION, OBJECTIONS AND MEMORANDUM/BRIEF IN SUPPORT OF THIS OBJECTION" (30 pages)**

, with the deputy Clerk of the Court _____, on August 1, 2017.

The Clerk was served the original filing (noted above) by hand delivery, at the U.S. District Court located at:

700 Main Street, Suite 202
Danville, VA 24541
Phone: (434) 793-7147

For the case "Brian David Hill v. Executive Office for United States Attorneys et al"
Civil Case No. 4:17-cv-00027

*Brian D. Hill*
~~Signed~~
**Signed**

**Brian David Hill (Pro Se)**
**Former news reporter & Founder of USWGO Alternative News**
**Home Phone #: (276) 790-3505**
**310 Forest Street, Apt. 2. Martinsville, VA 24112**
**U.S.W.G.O.**

1